ARTHUR AND VERNA JORDAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jordan v. Commissioner
Docket No. 12553-82.
United States Tax Court
T.C. Memo 1986-389; 1986 Tax Ct. Memo LEXIS 219; 52 T.C.M. (CCH) 234; T.C.M. (RIA) 86389; August 20, 1986. Arthur Jordan, pro se. Bryan R. Sullivan, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and section 6653(b) [1] additions to tax as follows: Section 6653(b)
Taxpayer
Year
Deficiency
Additions
Arthur Jordan
1973
$3,340.90
$1,670.45
1974
3,950.11
1,975.06
1975
6,982.43
3,491.21
Arthur and
Verna Jordan
1976
5,503.00
[2] 2,751.50
*220 The issues for decision are (1) whether petitioners understated their income and overstated their deductions, resulting in underpayments of tax and (2) whether such underpayments were due to fraud on the part of petitioner Arthur Jordan. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. At the time the petition was filed, petitioners Arthur and Verna Jordan lived in Chicago, Illinois. Petitioner Arthur Jordan timely filed individual Federal income tax returns for 1973, 1974, and 1975. Petitioners Arthur and Verna Jordan timely filed a joint Federal income tax return for 1976. David Stover, a part-time tax return preparer, prepared the Federal income tax returns for 1973, 1974, and 1975. Stanley McGee prepared the income tax return for 1976. From 1953 through at least 1976, petitioner Arthur Jordan (hereinafter petitioner) was a patrolman with the Chicago Police Department. From 1969 through 1976, petitioner also owned and operated a six (or seven) unit rental apartment building at 7515-17 South Phillips in Chicago, Illinois. Petitioner had no other *221 significant sources of income during the years in issue, but had some interest income and some small amounts of income from private security services performed during his off-duty hours. In August of 1974, petitioner, who had been living in the seventh unit in the apartment building, moved out. With the exception of his use of that unit, all seven units were rented during all of the years before the Court, except for short vacancy periods between tenants. For each of the taxable years 1973, 1974, and 1975, petitioner reported $8,537 in gross rental income from the apartment building, although he raised the rent of some tenants each year. In 1976, petitioner reported $8,550 in gross rental income from the apartment building, although he raised the rent of several tenants that year. The tenants' rents were increased as their leases expired and as new leases were entered into. Petitioner personally negotiated the terms of the leases and had written leases with all tenants except his brother, Nathaniel. Petitioner never reimbursed or reduced rents to tenants for any maintenance or decorating performed by the tenants in their apartments. In nearly all instances, petitioner increased *222 the monthly rental rates for leases signed in each of the years from 1969 through 1976. Petitioner personally collected the rents from his tenants. Also petitioner charged and collected a fee for all late payments of rent. In 1973 the rents for the various units varied from $160 to $210 per month, with most of the units rented in the $200-205-210 range. In 1974 the rents varied from $185 to $230 per month, with most of the units rented in the $205-210-230 range. In 1975 the rents varied from $185 to $230 per month, with most of the units rented in the $215 to $230 range. In 1976 the rents varied from $190 to $230 per month, with most of the units rented in the $220-225-230 range. The rents were regularly and systematically increased by increments of $5 per rental unit. From 1973 through 1976, petitioner received the following amounts of gross rental income from the apartment building and failed to report gross rental income as indicated below: Tenants
1973
1974
1975
1976
Lawrence Smith and
Ernestine Smith
$ 560.00
$2,415.00
$2,495.00
$2,595.00
Juanita Brown
2,175.00
975.00
Frankie Loggins and
Charles Loggins
2,000.00
Christine Green and
Bessie Williams
2,420.00
785.00
William Ballinger and
Joyce Ballinger
1,810.00
Anna Lemons
2,485.00
2,535.00
2,610.00
2,720.00
Gregory C. Frazier
925.00
2,245.00
1,330.00
Nathaniel Jordan
1,380.00
2,760.00
2,760.00
Monica Mohammed
1,230.00
Ibrahim Abdurrahim
1,540.00
1,100.00
James Beard and
Lillian Beard
1,545.00
Howard Ball and
Lillie M. Ball
1,100.00
2,670.00
Mossie L. Coley
1,540.00
2,690.00
Frank H. Becton and
Betty Becton
1,095.00
Rodney Surratt and
Stephanie D. Surratt
400.00
2,420.00
1,460.00
William Shaw and
Mary Shaw
2,460.00
2,580.00
1,320.00
Total rents paid to
petitioner
$14,310.00
$15,245.00
$17,070.00
$18,505.00
Gross rental income
reported on tax
return
8,537.00
8,537.00
8,537.00
8,550.00
Unreported gross
rental income
$ 5,773.00
$ 6,708.00
$ 8,533.00
$ 9,955.00
*223 Petitioner claimed deductions for gas heating expenses at the apartment building of $4,000 each year for 1973 and 1974 and $4,768 for 1976. Petitioner paid Peoples Gas only $1,202.96, $1,634.05, and $2,333.68 in 1973, 1974, and 1976, respectively, for such gas heating expenses. Petitioner thus overstated his deductions for gas heating expenses by the amounts of $2,797.04, $2,365.95, and $2,434.32, respectively, for those years.For each year 1974, 1975, and 1976, petitioner claimed $120 of depreciation deductions for a central air conditioning unit allegedly installed at the apartment building in January 1974. However, the air conditioner had not been installed at the apartment building, but had been installed at petitioner's personal residence at 9152 S. Kingston. Petitioner reported $2,791.12 and $2,579.94 in interest income from First Federal Savings and Loan in Chicago in the 1974 and 1975 tax years, respectively. Petitioner received $2,907.09 and $3,585.32 in interest income from First Federal Savings and Loan in 1974 and 1975, respectively. Petitioner understated his interest income by the amounts of $115.97 and $1,005.38, respectively, for those years. During the years *224 in issue, petitioner claimed the following interest expense deductions on Schedule A of his returns: 1973
1974
1975
1976
John M. Smyth Co.
$135.00
$135.00
$135.00
$115.00
Richard B. Zarbin
& Assocs.
245.00
245.00
242.00
Sears, Roebuck & Co.
270.00
270.00
Petitioner did not pay any interest to John M. Smyth Co. or Richard B. Zarbin & Associates during the years at issue. Petitioner paid Sears, Roebuck & Co. only $10.26 and $38.05 in interest during the taxable years 1974 and 1975, respectively. Petitioner thus overstated his Schedule A interest deductions by the amounts of $380, $639.74, $608.95, and $115, respectively, for the years before the Court. In 1973 petitioner claimed a Schedule A itemized deduction of $796.22 for medical expenses allegedly incurred while he was hospitalized at Jackson Park Hospital that year. Petitioner was not hospitalized at Jackson Park Hospital during 1973. His wife, who filed a separate return, was hospitalized there in 1973, but the bill was paid by Blue Cross except for $9.50. Petitioner claimed deductions of $700 and $550 for charitable contributions to the Union Central Missionary Baptist Church *225 in Chicago for 1973 and 1974, respectively. Attached to petitioner's 1973 return was a document that purported to be a receipt from the Union Central Missionary Baptist Church signed by one Mary George, church clerk. During the audit petitioner submitted another such receipt for 1974 purportedly signed by Mary George. Mary George did not sign either of these receipts, and the receipts did not come from the church. Petitioner did not make any contributions to the Union Central Missionary Baptist Church during 1973 or 1974. Petitioner knowingly attempted to substantiate both of these claimed contributions with forged receipts. [3]
Petitioner played an active role in the preparation of each year's tax return. Petitioner *226 either told the return preparer what figures to put on the return or he presented him a bag containing various receipts, many from prior years. Year after year petitioner presented many of the same receipts to his return preparer to use in the preparation of his returns. Petitioner frequently told his return preparer, David Stover, to change figures when the tax was too high. Petitioner would come back to Stover's house two or three times to tell him to change the return, saying "Stover, this is not enough money for me. I want all of my money back." Stover changed the return and put in whatever figures petitioner wanted. [4]
In early 1976, Carolyn McCollough, a tax auditor with the Internal Revenue Service, was assigned to audit petitioner for the 1973 and 1974 taxable years. In September 1977, Internal Revenue Service Special Agent Gordon Meyer commenced to investigate petitioner *227 for criminal violations for the taxable years 1973 through 1976. In both investigations, petitioner was uncooperative, refusing to produce documents, lying to the agents, or producing forged or fraudulent documents. Petitioner refused to provide certain documents or account for their absence. [5]
Petitioner lied to Carolyn McCollough about numerous matters. He told her he had reported all of his rental receipts. He told her that he frequently reduced a tenant's rent if the tenant repaired the apartment, this statement being made to explain the uneven amounts shown in certain rent receipt stubs he produced during the audit. The rent was never reduced under such circumstances. Also the rent receipt stubs totalled less than the amounts reported on the returns, and the amounts reported on the returns totalled far less than the rents petitioner actually received. Petitioner told Ms. McCollough that the rents averaged about $115 *228 per month in 1973 up to about $150 per month in 1976. This was false and petitioner, who personally negotiated the leases and personally collected the rents, knew it was false. Petitioner told Ms. McCollough that he never used leases in the apartment building. The record contains copies of eight leases signed by the petitioner, and all of the tenants, except petitioner's brother, had a written lease. In both investigations, petitioner used forged documents to justify deductions for charitable contributions and medical expenses. The forged receipts from the Union Central Missionary Baptist Church have been discussed above. In addition petitioner presented documents purportedly from the Jackson Park Hospital allegedly signed by a Mrs. Stewart, Registrar. Petitioner told the special agent he personally obtained that letter from the hospital and that he paid the amounts stated in the letter. There was no Mrs. Stewart and no position of registrar at the hospital. The letter was a forgery and petitioner lied about it. Petitioner also lied to both investigators, stating that certain expenses were incurred at the apartment building, when in fact they were personal expenses incurred *229 at his private residence or were just estimates for work that was never performed at all. One estimate for work that was never performed had been altered to change the figure from $145 to $1,145, but petitioner lied during the audit saying that the work had been performed at the apartment building and that he had paid the $1,145. In January 1980, petitioner was indicted on four counts of violating section 7206(1) for 1973, 1974, 1975, and 1976. On April 10, 1981, petitioner entered a guilty plea to counts 2 and 3 for the years 1974 and 1975. Petitioner pleaded guilty to willfully and knowingly filing false returns for those years, one falsity being that he reported total rents received of $8,537 each year when he well knew and believed that the total amount of rents each year was substantially in excess of that figure. The other falsity was overstating charitable contributions and interest expense deductions when he well knew and believed that he was not entitled to the deductions. The charges for 1973 and 1976 were dismissed. ULTIMATE FINDINGS OF FACT Petitioner substantially underpaid his taxes each year and such underpayments were due to fraud. OPINION The normal *230 split burden of proof applies in this fraud case. , affg. a Memorandum Opinion of this Court, cert. denied . Respondent's determinations of deficiencies are presumptively correct, and the taxpayer has the burden of proving error in them. ; Rule 142(a). Respondent bears the burden of proving the taxpayer's fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). . Respondent must establish that the taxpayer underpaid his taxes in some amount each year and that some part of the underpayment each year was due to fraud. ; . [6] In meeting his burden of showing an underpayment of tax, respondent cannot rely upon the taxpayer's failure to sustain his burden in regard to the deficiencies. ; . *231 In this case petitioners have failed to meet their burden of proof on the deficiency determinations. Wholly apart from their failure of proof, there is clear and convincing evidence in the record of understated income and overstated deductions that amply establishes an underpayment of tax each year. Respondent must further establish by clear and convincing evidence that these underpayments were due to fraud on the part of petitioner Arthur Jordan (hereinafter petitioner). Fraud under section 6653(b) requires a specific intent on the part of the taxpayer to evade a tax believed to be owing. ; , cert. denied ; , revg. , followed on remand ; , *232 . Respondent must prove that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of the taxes. ; , affg. a Memorandum Opinion of this Court; . Fraud is a question of fact that is determined on the basis of the entire record. , cert. denied , affg. ; , affd. without published opinion ; . Fraud can seldom be established by direct proof of the taxpayer's intention; therefore the taxpayer's entire course of conduct must be considered, and fraudulent intent can be established by circumstantial evidence. ; *233 ; ; . Respondent must prove fraud in each of the years before the Court. . Petitioner, a Chicago policeman, owned and personally operated a rental apartment building. He personally negotiated the leases with his tenants and personally collected the rents (including charges for any late payments). He raised the rents each time a lease was renewed or a new tenant moved in. In the four years before the Court, petitioner reported essentially the same amount of gross rental income each year and substantially understated his gross rental income each year in an increasing amount. A pattern of understating income over several years is strong evidence of fraud. ; . Similarly, a pattern of substantial overstatements of deductions supports a finding of fraud. , *234 affd. ; , affd. , cert. denied . Here, petitioner overstated his rental expenses and various Schedule A itemized deductions. Petitioner treated personal expenses, an air conditioner installed at his home, as a rental business asset and improperly claimed depreciation on it. Petitioner claimed business expense deductions for other personal expenditures and for estimates for work that was never performed. Petitioner deducted charitable contributions, a medical expense, and interest deductions that he knew he was not entitled to, not having made the contributions to the church, not having been hospitalized as he claimed, and not having paid the interest. Petitioner also prepared or caused to be prepared altered, forged, and fraudulent documents that he submitted to respondent to try to substantiate these various improper deductions. Moreover, for two of the years before the Court, 1974 and 1975, petitioner pleaded guilty to charges under section 7206(1). In , *235 this Court held a conviction (after trial or on a guilty plea) under section 7206(1) does not collaterally estop the taxpayer from contesting fraud under section 6653(b), since intent to evade tax is not an element of the crime charged under section 7206(1). The conviction is, however, highly relevant to the issue in this case. Petitioner is estopped to deny that he willfully filed false returns in 1974 and 1975 and that the falsity was that he reported rental income of only $8,537 each year whereas he well knew and believed that the total amount of rents was substantially in excess of that figure and that he claimed deductions that he well knew and believed he was not entitled to. ;(Considine III);(Considine II).[7] These factors can be considered as additional evidence of petitioner's fraudulent intent.
Finally, petitioner failed to cooperate during the investigation of his *236 tax returns. A failure to cooperate with respondent's attempt to determine his correct tax liability can be a further indicium of fraud. ; ; . Here petitioner failed or refused to produce certain records, lied to respondent's agents on a number of occasions about a number of matters, and produced altered, forged, and fraudulent documents to try to mislead them. Petitioner's false and misleading statements and other misconduct during the audit are telling "badges" of fraud in this case. The evidence clearly and convincingly establishes that petitioner underpaid his taxes in 1973, 1974, 1975, and 1976 and that the underpayments were due to fraud. Petitioner Arthur Jordan is liable for the section 6653(b) fraud addition. To reflect the foregoing, Decision will be entered under Rule 155.
[8]
*237 Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure. ↩
2. This addition to tax does not apply to Verna Jordan since respondent determined that no part of the underpayment was due to fraud on her part.↩
3. The record is not wholly clear as to whether petitioner or his return preparer forged these receipts, but if the return preparer forged them, he did so with petitioner's knowledge and at petitioner's direction. Mr. Stover, the return preparer, testified that petitioner first saw a similar receipt on his (Stover's) desk and told Stover "to make one of those things out for me." While the Court cannot condone such actions, the Court believed Mr. Stover's testimony.↩
4. Petitioner tried to suggest that he gave his return preparer all of his records and simply depended on him to prepare a proper return and signed the return thus prepared without reviewing it. The Court did not believe petitioner's testimony and found the testimony of Mr. Stover more credible.↩
5. We did not believe petitioner's testimony that the records of rent receipts were either stolen in a 1976 burglary or destroyed in a fire in 1977 or 1978. Moreover, these convenient mishaps appear to have occurred after the documents were requested.↩
6. See also ; ; .↩
7. See also .↩
8. The evidence shows understated rental income for 1974 and 1975 in amounts slightly less than and for 1976 in an amount slightly greater than the amounts set forth in the statutory notice of deficiency. Respondent has not sought an increased deficiency for 1976, but has asked the Court to find the lower taxable income amounts for 1974 and 1975. For that reason only, decision will be entered under Rule 155, as respondent requested in his brief.↩